UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHLOE MURPHY, § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. SA-22-CV-00123-XR |
| § | |
| NORTHSIDE INDEPENDENT SCHOOL § | |
| DISTRICT, § | |
| § | |
| *Defendant.* § | |

**ORDER**

On this date, the Court considered Defendant's motion to dismiss (ECF No. 15), as well as Plaintiff's response (ECF No. 18). After careful consideration, the Court issues the following order.

**BACKGROUND**

Plaintiff Chloe Murphy ("Murphy") filed this action against Northside Independent School District ("Northside" or "NISD") regarding severe and permanent injuries she alleges she sustained after her cheerleading coach forced her and the rest of the cheerleading team to complete frog jumps[1] for being late to practice.

In July 2019, Murphy was a student at Clark High School in NISD and a member of the all-girl high school cheer program. ECF No. 18 at 4. On the day of the incident, Plaintiff and another teammate were late to cheer practice and their cheerleading coach, Sarita Shanley

---

[1] Plaintiff's first amended complaint describes frog jumps as follows: "Sit in a deep squat position with your legs slightly wider than a shoulder-width apart. Keep your face front and your shoulders back. Place your feet on the ground so the toes are turned out at an angle – as if you were a resting frog. Let your hands slightly touch the floor. In order to accomplish a set of leapfrog exercises correctly and safely, make sure you sit on your heels and don't put too much weight on the toes. Then on the exhale jump forward and up into the air, trying to leap as high as you can. While you are in the air, there should be triple extension – three joints (hips, knees, and ankles) are to be involved in the movement. Lightly land on your feet back to the starting position, inhale as you squat back." ECF No. 9 at 9.

1

("Shanley") forced the cheerleading squad to complete 150 frog jumps for their tardiness. ECF No. 9 at 1–2. Plaintiff alleges that she and the rest of the team were not provided with any water or water breaks while completing the frog jump exercises, despite temperatures of 95–100 degrees Fahrenheit. ECF No. 18 at 7. Plaintiff alleges that during this intense punishment, she began to feel excruciating pain in her legs but tried to push through the pain and continue. *Id*. at 8. She then began to feel very sick and alleges that coaches were aware she was becomingly increasingly ill, but "were not concerned about her health at all." *Id*. She further alleges that "one coach continued to scold her" and, even after losing "feeling in her legs and vomit[ing] at the end of practice[,]" no one offered Plaintiff any water in an attempt to hydrate her. *Id*. Finally, she alleges that at no point did anyone contact a trainer or nurse for help. *Id*. Instead, her condition continued to worsen after getting home and her parents ultimately took her to an urgent care facility for medical treatment. *Id*.

Plaintiff had become severely dehydrated, causing damage to a muscle in her thigh, an excessive amount of proteins to be released into her blood system, and severe kidney damage, and resulting in a six-day stay in the hospital. ECF No. 9 at 2. While in the hospital, Plaintiff alleges that Shanley came to visit her, apologizing and admitting that "she had to [] leave her previous position because there were too many injuries that occurred." *Id*.

Plaintiff was ultimately diagnosed with Rhabdomyolysis and has an autoimmune disorder that causes her to develop welts on her body. *Id*. Plaintiff brings claims against Defendant NISD for unconstitutional policies, procedures, and practices violating her constitutional rights to due process and equal protection pursuant to Section 1983, as well as a claim for relief under Title IX of the Education Amendments of 1972. With regard to Plaintiff's constitutional claims, she alleges that the NISD School Board was negligent in hiring, training, and supervising Shanley.

*Id*. at 14–15. With regard to Plaintiff's equal protection and Title IX claims, she alleges that the NISD School Board "failed to provide female student athletes an equivalent level of funding as compared to male student athletes." *Id*. at 15.

Plaintiffs in the case were originally Chloe Murphy's parents, Suzanne and Michael Murphy ("Plaintiffs") as next friends, because Chloe Murphy was a minor at the time of the alleged incident. Plaintiffs filed their original complaint on February 11, 2022. ECF No. 1. Defendant filed its motion to dismiss for failure to state a claim on May 2, 2022 (ECF No. 5), and Plaintiffs subsequently filed their first amended complaint on May 25, 2022 (ECF No. 9). Defendant filed its second motion to dismiss for failure to state a claim on June 9, 2022 (ECF No. 15), and Plaintiffs responded on July 18, 2022 (ECF No. 18). Because Chloe Murphy turned eighteen years old in January of 2022, the Court ordered Plaintiffs Suzanne and Michael Murphy removed from the case and Chloe Murphy was substituted as sole named Plaintiff. ECF No. 27.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for

the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## II.     Analysis

Defendant NISD, in its motion to dismiss, seeks dismissal of Plaintiff's constitutional claims pursuant to 42 U.S.C. §1983 and her Title IX claim. For the reasons that follow, Plaintiff's constitutional claims and Title IX claims are dismissed.

### A. 42 U.S.C. § 1983 – Substantive Due Process

Plaintiff's first amended complaint alleges that Defendant NISD violated her constitutional rights to due process and equal protection and that NISD failed to adequately hire, train, or supervise Shanley, who was responsible for ensuring Plaintiff's safety.

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012). Plaintiff Murphy must also establish that NISD was either personally involved in the deprivation or that its wrongful actions were causally connected to the deprivation. *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).

Municipalities and local governmental entities qualify as persons liable to suit under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality or local governmental entity, such as an independent school district like NISD, may be held liable, however, only for those acts for which it is actually responsible. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). It is not enough, therefore, for Plaintiff merely to identify conduct properly attributable to the District; she must also demonstrate that, through the District's deliberate conduct, the custom or policy of the Board was the "moving force" behind the injuries alleged. *Id*. at 216.

Municipal liability cannot be predicated on the doctrine of *respondeat superior*.[2] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Therefore, establishing municipal liability under Section 1983 requires proof of three elements: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 694). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. Alternatively, a plaintiff can show that she was injured as a result of the District's "deliberate indifference" to her constitutional rights. *See City of Canton v. Harris,* 489 U.S. 378, 387–88 (1989).

Plaintiff has failed to establish municipal liability because she has proffered no evidence indicating that there was an official policy or custom that was the moving force behind her injuries. An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *K.T. v. Natalia I.S.D.,* No. SA–09–CV–285–XR, 2010 WL 1484709 (W.D. Tex. Apr. 12, 2010) (quoting *Piotrowski* 237 F.3d at 579). Plaintiff has failed to show the existence of a policy or custom or that the Board had actual or constructive knowledge of its existence because she has

---

[2] Plaintiff's first amended complaint advances a theory of liability based on respondeat superior. *See* ECF No. 9 at 16 ("As a result, the Defendant Northside Independent School District is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of each student pursuant to the theory of Respondeat Superior.") Plaintiff's response, however, abandons the argument, acknowledging that she must allege that the School Board itself caused the injury as there is no respondeat superior liability pursuant to *Monell*. *See* ECF No. 18 at 17.

pointed to only this single incident. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003).

A policy becomes official when it results from the decision or acquiescence of "those officials or governmental bodies who speak with final policymaking authority for the [governmental unit]." *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989). Under Texas law, final policymaking authority in a public school district rests with the district's Board of Trustees. *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993); *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) ("Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'") (citing TEX. EDUC. CODE § 11.151(b)). In order to establish that the policy was a "moving force" behind the constitutional violation, the plaintiff must prove a direct causal link between the policy and the violation. *Piotrowski,* 237 F.3d at 580. "The description of a policy or custom and its relation to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City,* 130 F.3d 162, 167 (5th Cir. 1997).

The Court finds that Plaintiff has failed to show an official policy promulgated by a policymaker or a final decision by a person or entity with final policymaking authority for the District that was the moving force behind the alleged violations. Rather, taking Plaintiff's factual allegations as true, she has asserted an allegation of one instance of misjudgment by one NISD employee. This does not amount to a practice so common that it was in effect a NISD policy. Even further, Plaintiff actually argues that NISD had policies in place to protect student athletes. *See* ECF No. 9 at 4–5. Plaintiff alleges no School Board policy that was the driving force behind the constitutional violation she alleges to have suffered. She therefore fails to demonstrate both

that her constitutional rights were violated through the execution of an official policy or custom properly attributable to the Board itself and that the custom or policy of the Board was the moving force behind the injuries alleged.

With regard to a deliberate indifference theory, Plaintiff's allegations that NISD's acts and omissions, including inequitably funding football more than cheerleading, hiring Shanley despite a history of athletes being injured under her supervision in the past, and failing to train Shanley, are conclusory and fail to establish deliberate indifference by the Board of Trustees. There are no factual allegations that the Board knew that Shanley was directing cheerleaders to complete frog jumps or that the Board was otherwise deliberately indifferent to Plaintiff's constitutional rights. Plaintiff only alleges what she believes should have been an obvious inference for the Board to draw, "that the use of exercise in a punitive manner and/or a hazardous routine caused injuries so many times in the past, that it put the School Board on notice to develop a specific Policy & Procedure[] on the topic." ECF No. 18 at 19. Without any evidence of a single other injury, however, Plaintiff fails to establish that the Board was deliberately indifferent to her constitutional rights; as she alleges, the Board was aware of the dangers of exercise as punishment and had policies in place to address the issue.

Because Plaintiff fails to establish that there was a policy, known by a policymaker, or that NISD was deliberately indifferent to her constitutional rights, her Section 1983 due process claim against NISD is **DISMISSED**.

### B. 42 U.S.C. § 1983 – Equal Protection

Plaintiff's claim that NISD violated the Equal Protection Claim similarly fails. Her claim is based on the same theory that underlies her Title IX claim–that cheerleaders did not receive the same funding, equipment, and supervision as football players.

To state a claim of sex discrimination under the Equal Protection Clause and Section 1983, Plaintiff must allege that she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (internal quotation marks and citation omitted). A discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (emphasis in original).

As discussed further in the context of Plaintiff's Title IX claim, her amended complaint is devoid of any allegations that could give rise to a plausible inference of intentional discrimination on the basis of her sex. Nor has she identified any similarly situated individuals for purposes of this claim, only that other athletes are subject to sports-based, as opposed to sex-based, distinctions. This claim is therefore dismissed.

**C. Failure to Train / Supervise**

To avoid dismissal of a Section 1983 failure-to-train claim or a failure-to-supervise claim, a plaintiff must plead sufficient facts to plausibly show: "(1) that the school district's training or supervision procedures were inadequate, (2) that the school district was deliberately indifferent in adopting such policies, and (3) that the inadequate policies directly caused the violations in question." *Chupka as next friend of C.C. v. Pflugerville Indep. Sch. Dist.*, No. 1:21-CV-232-RP, 2021 WL 2722812, at *4 (W.D. Tex. Mar. 29, 2021), *aff'd*, No. 21-50356, 2022 WL 1056101 (5th Cir. Apr. 8, 2022) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)). A plaintiff must therefore allege facts that could support a finding that the "municipality 'supervises its employees in a manner that

manifests deliberate indifference to the constitutional rights of citizens.'" *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 656 (N.D. Tex. 2018) (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 445, 453 (5th Cir. 1994)). It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training. *Canton*, 489 U.S. at 391, 109 S. Ct. 1197.

Plaintiff's allegations of failure-to-train and failure-to-supervise do not demonstrate deliberate indifference. There are two means of proving deliberate indifference for failure to train claims, which has been extended to failure to supervise claims. *Canton*, 489 U.S. at 390 n.10 (1989); *E.G. by Gonzalez v. Bond*, No. 1:16-CV-0068-BL, 2017 WL 3493124, at *4 n.4 (N.D. Tex. June 29, 2017), *report and recommendation adopted*, No. 1:16-CV-068-C, 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017). First, a plaintiff can establish deliberate indifference if a violation occurs "so often" that a factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Canton*, 489 U.S. at 390 n.10. Second, there is a "single incident exception" where, even absent proof of a pattern, deliberate indifference can be inferred if a factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

As already discussed, Plaintiff has not pleaded sufficient facts to demonstrate a pattern of violations within NISD. She has alleged only one single incident. Therefore, she must satisfy the "single incident" exception and show that her injuries were a highly predictable consequence of a failure to train or supervise.

Plaintiff alleges that Shanley was "not trained to deal with the physiological and anatomical issues unique to teenage female athletes, not trained in state law and Board Policy not

10

to use exercise as a punishment and . . . not [to] use an exercise that was inherently hazardous, and fail[ed] to assure pre-practice safety and hydration measures were [sic] and post-injury safety practices were in place." ECF No. 18 at 14. Taking Plaintiff's well-pleaded allegations as true, Plaintiff has not pleaded sufficient facts to establish deliberate indifference under the narrow single-incident exception. Plaintiff's own pleadings suggest that NISD had policies and procedures in place preventing the use of exercise as punishment. *C.f., Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (recognizing a failure-to-train claim when the plaintiffs alleged the school district had a policy of providing *no training whatsoever* regarding its employees' legal duties not to conduct unreasonable searches and finding that there was an obvious need for some form of training). Plaintiff has not provided any basis to support her contention that Shanley or other members of the cheerleading staff were not trained on the safety and medical care policies that the School Board had in place. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiff next asserts a failure to supervise claim. Again, however, Plaintiff fails to plead any facts supporting her assertion that NISD was deliberately indifferent in creating or enforcing policies regarding the supervision of its employees. In fact, Plaintiff's pleadings do not reference a single supervision policy; there are no factual allegations about how NISD's supervision of its staff was inadequate aside from Plaintiff's general assertion that Shanley should have never been hired and that she was not supervised.

Finally, in addition to a failure to train and supervise, Plaintiff's complaint alleges that NISD should have never hired Shanley in the first place "based upon her previous history of

injuring students during cheerleading and other physical exercise activities." ECF No. 9 at 14. Plaintiff, however, does not elaborate or mention this claim in her response to the motion to dismiss, except as a basis to show the existence of NISD's policies and customs adopted with deliberate indifference by the Board of Trustees and as an event which triggered the course of events wherein NISD failed to adequately train its staff. *See generally* ECF No. 18.

For the foregoing reasons, Plaintiff's constitutional claims against Defendant NISD, pursuant to Section 1983, are dismissed.

### D. Title IX Claim

Title IX of the Education Amendments of 1972 provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). While the "express statutory means of enforcement is administrative," Title IX is also enforceable through an implied private right of action. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280–81 (1998) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)). When the Plaintiff seeks damages, as she does here, the Title IX plaintiff must allege intentional discrimination. *Id*. at 281 (citing *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75–76 (1992)).

"There are two types of claims under Title IX: one seeking to hold an institution liable for teacher-on-student or student-on-student sexual harassment and one challenging an institution's official policy of intentional discrimination on the basis of sex." *Cano v. Harlandale Indep. Sch. Dist.*, No. SA-19-CV-01296-ESC, 2020 WL 7385843, at *3 (W.D. Tex. Dec. 16, 2020); *see also Pederson v. La. State Univ.*, 213 F.3d 858, 881–82 (5th Cir. 2000). This case involves the latter. In such cases, "[t]he proper test is not whether [the institution] knew of or is responsible for the

actions of others, but is whether [the institution] intended to treat women differently on the basis of their sex." *Pederson*, 213 F.3d at 882.

"The elements of this type of Title IX claim are analogous to those required to prove a claim under Title VII, with the exception that Title IX only allows for recovery for intentional discrimination." *Cano*, 2020 WL 7385843, at *3; *see also Pacheco v. St. Mary's Univ.*, No. 15-cv-1131 (RCL), 2017 WL 2670758, at *14 (W.D. Tex. June 20, 2017).

Plaintiff alleges that Defendant NISD intended to treat female athletes in cheerleading with less institutional support as provided to male athletes at the school. She alleges that NISD provided "greater safety measures for male athletes on the practice field than for the female cheerleaders who lead the charge on the sidelines." ECF No. 18 at 23.

Plaintiff's amended complaint makes other general allegations, including that "a significant portion of [NISD's] budget [is] centered around boy's [sic] sports, including and especially football." ECF No. 9 at 8. "In concert with such investment[,] the District provides a significant amount of safety support, commensurate with the propensity for a football player to experience a concussion or dehydration during practice or a game." *Id*. Finally, Plaintiff alleges that "she was not provided an instructor familiar with the unique safety needs of female student athletes while male student[] athletes, including and especially those related to football, are provided a full array of fully trained exercise and medical staff . . . ." *Id*.

While Plaintiff alleges in conclusory terms that NISD's policies and practices constitute disparate treatment of female athletes, Plaintiff fails to allege any facts to show that NISD's actions in this case were in any way carried out because of Plaintiff's gender. Instead, Plaintiff's allegations at most demonstrate a discrepancy between sports. *See Cano*, 2020 WL 7385843, at *4 ("As there are myriad differences between football and the dance team besides the gender of

the majority of each activity's participants, this is not differential treatment of similarly situated individuals. Title IX liability does not arise based solely on the fact that different sports teams might require different treatment based on the unique training, safety, performance, and other specific factors related to each.").

Plaintiff has provided no evidence that NISD failed to protect her from injury on the basis of her sex, or that male students similarly situated were treated differently. *See Arceneaux v. Assumption Par. Sch. Bd.*, 733 F. App'x 175, 179 (5th Cir. 2018) (dismissing cheerleader's Title IX claim where she failed to allege that she was treated any differently than male students on the basis of her sex).

Finally, Plaintiff fails to provide any factual basis for her assertion that the "acts of the School Board and District were intentional." ECF No. 18 at 24. Her assertion that "Shanley was not correctly trained by the School Board in how to address the unique and individualized needs of female athletes like [Plaintiff]" (ECF No, 9 at 11) is insufficient to establish a Title IX basis. Plaintiff has not alleged that frog jumps are a district policy. In fact, the factual allegations regarding Defendant's policies instead concentrate on the fact that a School Board policy preventing the use of exercise as punishment was in place. Plaintiff has failed to allege facts that might plausibly indicate that a district official had actual notice of Shanley's use of frog jumps or lack of water breaks in practices, and therefore fails to state a Title IX claim against Defendant. Plaintiff's Title IX claim is therefore dismissed.

### E.  Claims for Punitive Damages and Emotional Distress Damages

As the Court held in open court on October 13, 2022, Plaintiff's claims for punitive damages under Section 1983 and Title IX, and her claims for emotional distress damages under Title IX are dismissed. ECF No. 22.

### F. Leave to Amend

In her response, Plaintiff requests leave to file another amended complaint. ECF No. 18 at 13. A district court's discretion to deny leave to amend is cabined by the Federal Rule of Civil Procedure's bias in favor of granting leave. *Chupka*, 2021 WL 2722812, at *6; *see also Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). Accordingly, a district court must have a "substantial reason to deny leave to amend." *Id.* (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). In making that determination, courts examine the following considerations: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)). Having considered the above factors, the Court **GRANTS** Plaintiff leave to amend her complaint.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's first amended complaint is **GRANTED**. Plaintiff's constitutional claims and Title IX claims, as well as her claim for punitive damages under Section 1983, are **DISMISSED**. Plaintiff has until **March 15, 2023** to amend her complaint to state claims upon which relief can be granted, otherwise the case will be dismissed in its entirety.

It is so **ORDERED**.

**SIGNED** February 16, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE