## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHLOE MURPHY, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-22-CV-00123-XR |
| | § | |
| NORTHSIDE INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| *Defendant*. | § | |

## <u>ORDER</u>

On this date, the Court considered Defendant's motion to dismiss Plaintiff's second amended complaint (ECF No. 34), Plaintiff's response (ECF No. 36), and Defendant's reply (ECF No. 38). After careful consideration, the Court issues the following order.

## BACKGROUND

As all parties are familiar with the facts in this case, the Court includes here only those facts necessary to its analysis of the pending motion to dismiss Plaintiff's second amended complaint.[1]

Plaintiff Chloe Murphy ("Murphy") filed this action against Northside Independent School District ("Northside" or "NISD") regarding severe and permanent injuries she alleges she sustained after her cheerleading coach, Sarita Shanley, forced her and the rest of the cheerleading team to complete frog jumps for being late to practice.

Plaintiff brings claims against Defendant NISD for unconstitutional policies, procedures, and practices violating her constitutional rights to due process pursuant to Section 1983, as well

---

[1] Additional background information can be found in the Court's February 16, 2023 Order granting Defendant's motion to dismiss Plaintiff's first amended complaint. ECF No. 29.

as a claim for relief under Title IX of the Education Amendments of 1972. With regard to Plaintiff's constitutional claims, she alleges that the NISD School Board deprived Plaintiff of her rights to property, life, liberty, and the pursuit of happiness, and that the School Board was negligent in training Shanley. ECF No. 33 at 16–17. With regard to Plaintiff's Title IX claims, she alleges that the NISD School Board "failed to provide female student athletes an equivalent level of funding as compared to male student athletes" and that such failure also affected the hiring, training, support services, and safety measures offered by the school. *Id*. at 17–18.[2]

On February 16, 2023, the Court granted Defendant's motion to dismiss Plaintiff's first amended complaint and granted Plaintiff leave to amend her complaint.[3] ECF No. 29. Plaintiff subsequently filed her second amended complaint on March 14, 2023 (ECF No. 33), which is the subject of Defendant's pending motion to dismiss (ECF No. 34).

## DISCUSSION

### I.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain

---

[2] Plaintiff confirms in her response to Defendant's motion to dismiss that she has abandoned her equal protection claim in her second amended complaint. ECF No. 36 at 13.

[3] Plaintiff's claims for punitive damages under Section 1983 and Title IX, and her claims for emotional distress damages under Title IX, were dismissed without leave to amend. ECF No. 29 at 14.

statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## II.    Analysis

Defendant NISD, in its motion to dismiss Plaintiff's second amended complaint, seeks dismissal of Plaintiff's constitutional claims pursuant to 42 U.S.C. §1983 and her Title IX claim.

For the reasons that follow, Plaintiff's constitutional claims and Title IX claims are dismissed. Plaintiff's second amended complaint largely mirrors her first amended complaint and exhibits the same deficiencies. She has failed to remedy her pleadings in her second amended complaint to state a claim upon which relief can be granted.

### A.  42 U.S.C. § 1983 – Substantive Due Process

Plaintiff's second amended complaint alleges that Defendant NISD violated her constitutional rights to due process and also that NISD failed to adequately hire, train, or supervise Shanley, who was responsible for ensuring Plaintiff's safety.

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012). Plaintiff Murphy must also establish that NISD was either personally involved in the deprivation or that its wrongful actions were causally connected to the deprivation. *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).

Municipalities and local governmental entities qualify as persons liable to suit under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality or local governmental entity, such as an independent school district like NISD, may be held liable, however, only for those acts for which it is actually responsible. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). It is not enough, therefore, for Plaintiff merely to identify conduct properly attributable to the District; she must also demonstrate that, through the

District's deliberate conduct, the custom or policy of the Board was the "moving force" behind the injuries alleged. *Id.* at 216.

Municipal liability cannot be predicated on the doctrine of *respondeat superior.*[4] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Therefore, establishing municipal liability under Section 1983 requires proof of three elements: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 694). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. Alternatively, a plaintiff can show that she was injured as a result of the District's "deliberate indifference" to her constitutional rights. *See City of Canton v. Harris,* 489 U.S. 378, 387–88 (1989).

The Court, after granting Defendant's motion to dismiss Plaintiff's first amended complaint (ECF No. 29), advised Plaintiff that she must state a claim upon which relief can be granted. Again, however, Plaintiff has failed to establish municipal liability. She has proffered no evidence indicating that there was an official policy or custom that was the moving force behind her injuries. An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *K.T.*

---

[4] Plaintiff's second amended complaint again advances a theory of liability based on respondeat superior, despite her previous abandonment of the argument in her response to Defendant's motion to dismiss Plaintiff's first amended complaint. *See* ECF No. 18 at 17. The Court notes that respondeat superior liability is not applicable in this case because Plaintiff cannot advance a Section 1983 claim "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

*v. Natalia I.S.D.,* No. SA–09–CV–285–XR, 2010 WL 1484709 (W.D. Tex. Apr. 12, 2010) (quoting *Piotrowski* 237 F.3d at 579). Plaintiff has failed to show the existence of a policy or custom or that the Board had actual or constructive knowledge of its existence because she has pointed to only this single incident. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003).

A policy becomes official when it results from the decision or acquiescence of "those officials or governmental bodies who speak with final policymaking authority for the [governmental unit]." *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989). Under Texas law, final policymaking authority in a public school district rests with the district's Board of Trustees. *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993); *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) ("Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'") (citing TEX. EDUC. CODE § 11.151(b)). In order to establish that the policy was a "moving force" behind the constitutional violation, the plaintiff must prove a direct causal link between the policy and the violation. *Piotrowski,* 237 F.3d at 580. "The description of a policy or custom and its relation to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City,* 130 F.3d 162, 167 (5th Cir. 1997).

The Court finds that Plaintiff has failed to show an official policy promulgated by a policymaker or a final decision by a person or entity with final policymaking authority for the District that was the moving force behind the alleged violations. Rather, taking Plaintiff's factual allegations as true, she has asserted an allegation of one instance of misjudgment by one NISD employee. This does not amount to a practice so common that it was in effect a NISD policy.

Even further, Plaintiff actually argues that NISD had policies in place to protect student athletes. *See* ECF No. 33 at 4–6. Plaintiff alleges no School Board policy that was the driving force behind the constitutional violation she alleges to have suffered. She therefore fails to demonstrate both that her constitutional rights were violated through the execution of an official policy or custom properly attributable to the Board itself and that the custom or policy of the Board was the moving force behind the injuries alleged.

With regard to a deliberate indifference theory, Plaintiff alleges in her second amended complaint:

> Notwithstanding[] the enactment in state law and regulations that are reflected in the Texas Education Code, UIL Directives, School and Board Policies and Procedures[,] and operative professional standards of care . . . the School failed to train Shanley at all about the law, her duties and responsibilities thereunder, regulations related thereto and professional standards of care for providing safe and non-punitive exercises for female students in particular.

ECF No. 33 at 16.

Again, however, Plaintiff's claims for deliberate indifference of the School Board are conclusory and fail to establish deliberate indifference by the Board of Trustees. Plaintiff's second amended complaint still fails to allege any factual allegations that the Board knew that Shanley was directing cheerleaders to complete frog jumps or that the Board was otherwise deliberately indifferent to Plaintiff's constitutional rights. Plaintiff only alleges what she believes the Board should have known, that "non-punitive exercises for female students in particular" (*Id.*) put the School Board on notice (with either actual or constructive knowledge exhibited in discussions at board meetings) and that the School Board was therefore deliberately indifferent.

With regard to the School Board, Plaintiff alleges that NISD first "had 'Actual Knowledge' of the propensity for constitutional violations because it had frequent discussions at

School Board meetings about the issues, and received and developed written information on the topic of safety" and alternatively, that it had "'Constructive Knowledge' . . . on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." ECF No. 36 at 17. These conclusory allegations of actual or constructive knowledge, however, cannot support a claim premised upon an official custom. Without any evidence of a single other injury, Plaintiff fails to establish that the Board was deliberately indifferent to her constitutional rights; as she herself alleges, the Board was aware of the dangers of exercise as punishment and had policies in place to address the issue.

Because Plaintiff fails to establish that there was a policy, known by a policymaker, or that NISD was deliberately indifferent to her constitutional rights, her Section 1983 due process claim against NISD is dismissed.

### B.  Failure to Train / Supervise

To avoid dismissal of a Section 1983 failure-to-train claim or a failure-to-supervise claim, a plaintiff must plead sufficient facts to plausibly show: "(1) that the school district's training or supervision procedures were inadequate, (2) that the school district was deliberately indifferent in adopting such policies, and (3) that the inadequate policies directly caused the violations in question." *Chupka as next friend of C.C. v. Pflugerville Indep. Sch. Dist.*, No. 1:21-CV-232-RP, 2021 WL 2722812, at *4 (W.D. Tex. Mar. 29, 2021), *aff'd*, No. 21-50356, 2022 WL 1056101 (5th Cir. Apr. 8, 2022) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)). A plaintiff must therefore allege facts that could support a finding that the "municipality 'supervises its employees in a manner that

manifests deliberate indifference to the constitutional rights of citizens.'" *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 656 (N.D. Tex. 2018) (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 445, 453 (5th Cir. 1994)). It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training. *Canton*, 489 U.S. at 391, 109 S. Ct. 1197.

Plaintiff's allegations of failure-to-train and failure-to-supervise do not demonstrate deliberate indifference. There are two means of proving deliberate indifference for failure to train claims, which has been extended to failure to supervise claims. *Canton*, 489 U.S. at 390 n.10 (1989); *E.G. by Gonzalez v. Bond*, No. 1:16-CV-0068-BL, 2017 WL 3493124, at *4 n.4 (N.D. Tex. June 29, 2017), *report and recommendation adopted*, No. 1:16-CV-068-C, 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017). First, a plaintiff can establish deliberate indifference if a violation occurs "so often" that a factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Canton*, 489 U.S. at 390 n.10. Second, there is a "single incident exception" where, even absent proof of a pattern, deliberate indifference can be inferred if a factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

As already discussed, Plaintiff has not pleaded sufficient facts to demonstrate a pattern of violations within NISD. She has alleged only one single incident. Therefore, she must satisfy the "single incident" exception and show that her injuries were a highly predictable consequence of a failure to train or supervise.

Plaintiff alleges that Shanley was not properly trained by the School Board about the law surrounding safe and non-punitive exercises for female students. ECF No. 33 at 16. Taking

9

Plaintiff's well-pleaded allegations as true, Plaintiff has not pleaded sufficient facts to establish deliberate indifference under the narrow single-incident exception. Plaintiff's own pleadings suggest that NISD had policies and procedures in place preventing the use of exercise as punishment. *C.f., Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (recognizing a failure-to-train claim when the plaintiffs alleged the school district had a policy of providing *no training whatsoever* regarding its employees' legal duties not to conduct unreasonable searches and finding that there was an obvious need for some form of training). Plaintiff has not provided any basis to support her contention that Shanley or other members of the cheerleading staff were not trained on the safety and medical care policies that the School Board had in place. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiff next asserts a failure to supervise claim. Again, however, Plaintiff fails to plead any facts supporting her assertion that NISD was deliberately indifferent in creating or enforcing policies regarding the supervision of its employees. In fact, Plaintiff's pleadings do not reference a single supervision policy; there are no factual allegations about how NISD's supervision of its staff was inadequate aside from Plaintiff's general assertion that Shanley should have never been hired and that she was not supervised.

Finally, in addition to a failure to train and supervise, Plaintiff's second amended complaint alleges that NISD should have never hired Shanley in the first place "because she had a history of injuring female cheerleading students." ECF No. 33 at 14. Again, however, Plaintiff fails to elaborate on her basis for this allegation in her second amended complaint to show deliberate indifference by the Board of Trustees.

For the foregoing reasons, Plaintiff's constitutional claims against Defendant NISD, pursuant to Section 1983, are dismissed.

### C.  Title IX Claim

Title IX of the Education Amendments of 1972 provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). While the "express statutory means of enforcement is administrative," Title IX is also enforceable through an implied private right of action. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280–81 (1998) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)). When a plaintiff seeks damages, as she does here, the Title IX plaintiff must allege intentional discrimination. *Id.* at 281 (citing *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75–76 (1992)).

"There are two types of claims under Title IX: one seeking to hold an institution liable for teacher-on-student or student-on-student sexual harassment and one challenging an institution's official policy of intentional discrimination on the basis of sex." *Cano v. Harlandale Indep. Sch. Dist.*, No. SA-19-CV-01296-ESC, 2020 WL 7385843, at *3 (W.D. Tex. Dec. 16, 2020); *see also Pederson v. La. State Univ.*, 213 F.3d 858, 881–82 (5th Cir. 2000). This case involves the latter. In such cases, "[t]he proper test is not whether [the institution] knew of or is responsible for the actions of others, but is whether [the institution] intended to treat women differently on the basis of their sex." *Pederson*, 213 F.3d at 882.

"The elements of this type of Title IX claim are analogous to those required to prove a claim under Title VII, with the exception that Title IX only allows for recovery for intentional

discrimination." *Cano*, 2020 WL 7385843, at *3; *see also Pacheco v. St. Mary's Univ.*, No. 15-cv-1131 (RCL), 2017 WL 2670758, at *14 (W.D. Tex. June 20, 2017).

Plaintiff alleges in her second amended complaint that Defendant NISD intended to treat female athletes in cheerleading with less institutional support than was provided to male athletes at the school. ECF No. 33 at 17. Second, she alleges that this discrepancy in funding between female and male athletes "affected, staff hiring, staff training, support services and safety measures." *Id*. at 18. Third, she alleges that she "was not provided an instructor familiar with the unique safety needs of female student athletes[,] while male students athletes, including and especially those related to football, are provided a full array of fully trained exercise and medical staff . . . ." *Id*. Finally, she alleges that "male football players benefit from significant safety features to guard against a male student getting a concussion and dehydration, as compared to female student athletes . . . ." *Id*.

Plaintiff's allegations in her second amended complaint are again conclusory. While she alleged that NISD's policies and practices constitute disparate treatment of female athletes, she fails to provide any facts that demonstrate that NISD's actions in this case were in any way carried out because of Plaintiff's gender. Instead, as was the situation in her first amended complaint, Plaintiff's second amended complaint and the allegations therein at most demonstrate a discrepancy between sports. *See Cano*, 2020 WL 7385843, at *4 ("As there are myriad differences between football and the dance team besides the gender of the majority of each activity's participants, this is not differential treatment of similarly situated individuals. Title IX liability does not arise based solely on the fact that different sports teams might require different treatment based on the unique training, safety, performance, and other specific factors related to each.").

Plaintiff has provided no evidence that NISD failed to protect her from injury on the basis of her sex, or that male students similarly situated were treated differently. *See Arceneaux v. Assumption Par. Sch. Bd.*, 733 F. App'x 175, 179 (5th Cir. 2018) (dismissing cheerleader's Title IX claim where she failed to allege that she was treated any differently than male students on the basis of her sex).

Finally, Plaintiff once again fails to provide any factual basis for her assertion that the School Board was acting in an intentional manner. Plaintiff has not alleged that frog jumps are a district policy. In fact, the factual allegations regarding Defendant's policies instead concentrate on the fact that a School Board policy preventing the use of exercise as punishment was in place. Plaintiff has failed to allege facts that might plausibly indicate that a district official had actual notice of Shanley's use of frog jumps or lack of water breaks in practices, and therefore fails to state a Title IX claim against Defendant. Plaintiff's Title IX claim is therefore dismissed.

The Court has previously allowed Plaintiff to amend her complaint and she has failed to cure the deficiencies in her pleadings. The Court therefore holds that further leave to amend is futile. *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)) (in making the determination to deny leave to amend, the Court considers the following: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment"). Having considered these factors, the Court **DENIES** Plaintiff leave to amend her complaint.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's second amended complaint (ECF No. 34) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** May 3, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE